■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMAR JOHNSON, Also Known as JAMS, Appellant. [911 NYS2d 713]—

McCarthy, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered January 16, 2009 in Albany County, upon a verdict convicting defendant of the crimes of murder in the second degree, conspiracy in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree.

The husband of Tammara McCoy, defendant's girlfriend, was fatally shot in the head. In connection with this homicide, defendant was charged with murder in the second degree, manslaughter in the first degree, conspiracy in the second degree and criminal possession of a weapon in the second degree. As part of the same indictment, he was charged with criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree for possessing two handguns that were apparently not used in the murder. Supreme Court denied defendant's motion to sever those two

counts. At the end of a trial, the jury acquitted defendant of the count of criminal possession of a weapon in the second degree for a handgun unrelated to the murder, did not address the lesser-included manslaughter count, and convicted him of the other counts. Defendant appeals.

Supreme Court did not abuse its discretion by refusing to sever two counts of the indictment. Those counts were properly joinable because they are defined by the same or similar statutory provisions as the count of criminal possession of a weapon in the second degree related to the handgun used to commit the murder (*see* CPL 200.20 [2] [c]). Under those circumstances, the decision regarding severance rested in the court's sound discretion (*see* CPL 200.20 [3]; *People v Nickel*, 14 AD3d 869, 870 [2005], *lv denied* 4 NY3d 834 [2005]). Defendant testified as to all of the charges, demonstrating that he was not persuaded against testifying on any count due to the joinder (*see* CPL 200.20 [3] [b]). The jury acquitted him of one of the weapon charges, showing that the jury could separately consider the proof on each count (*see* CPL 200.20 [3] [a]). Thus, the court did not abuse its discretion in denying the severance motion.

The evidence was legally sufficient to support the count for criminal possession of the weapon unrelated to the murder, and the verdict was not against the weight of the evidence. Upon executing a search warrant at defendant's apartment, the police discovered a shoe box in the closet. The box contained two handguns, ammunition and personal papers. The handgun at issue was test-fired and found to be operable. Defendant's landlord testified that no one other than defendant lived in the apartment, establishing his dominion and control over the closet where the contraband was located (*see People v Carter*, 74 AD3d 1375, 1377-1378 [2010], *lv denied* 15 NY3d 772 [2010]; *People v Edwards*, 39 AD3d 1078, 1079 [2007]). This evidence was legally sufficient to establish the charge (*see* Penal Law § 265.02 [1]).* Defendant testified that only he and his minor son lived in the apartment. He testified that the shoebox and paperwork were his, but that he did not own the handguns or ammunition and he was certain that they did not belong to his young son. He had never seen the guns and implied that they were placed there during a recent break-in or planted by the police. The jury disbelieved defendant's testimony denying knowledge or ownership of the guns, instead crediting that of the officers. Accepting these credibility determinations, the weight of the evidence supported the verdict on this count (*see People v Carter*, 74 AD3d at 1377-1378).

---

* Defendant acknowledged prior to trial that he had previously been convicted of a crime.

The murder, conspiracy and weapon charges were supported by the evidence. Several officers testified that defendant gave an oral statement confessing to these crimes. A typewritten, but unsigned, copy of the statement was admitted into evidence. In that statement, defendant admitted that he and McCoy planned to kill the victim and defendant shot the victim with a .357 Magnum handgun. While a defendant may not be convicted solely based upon his or her own confession without additional proof that the offense has been committed (*see* CPL 60.50), the corroborating proof need not establish guilt or every detail of the crime or confession, and need only show that the crime has been committed by someone (*see People v Cole*, 24 AD3d 1021, 1024-1025 [2005], *lv denied* 6 NY3d 832 [2006]). It was undisputed that the victim was fatally shot. A restaurant employee remembered McCoy and the victim as customers a short time before the shooting. Phone records show numerous calls between defendant and McCoy at times consistent with communications noted in defendant's statement, including when McCoy was leaving the restaurant and as soon as she got out of her car in the parking lot where the shooting occurred. Witnesses saw McCoy exiting her car within moments of the shooting. Police found an operable .357 Magnum handgun in the river near where defendant stated he had disposed of the murder weapon. The medical examiner testified that he could not be certain of the caliber of weapon that killed the victim, but the wounds were consistent with a .357 bullet. Police also discovered defendant's clothing in a garbage bag inside a dumpster by his apartment, consistent with his statement of how he had disposed of the clothing he wore during the murder. No witness could identify the murderer, but several witnesses testified that the shooter wore clothing consistent with that found by police in the dumpster. Although the eyewitnesses offered inconsistent versions of the incident, they each offered some details that were consistent with defendant's statement or the testimony of other eyewitnesses. Defendant's testimony provided the jury with his version of his whereabouts on the evening of the murder; he testified that the statement was fabricated by police and that he did not commit any of the alleged crimes. Giving deference to the jury's credibility determinations, defendant's confession was sufficiently corroborated and the verdict was not against the weight of the evidence (*see People v Rosado*, 36 AD3d 965, 966-967 [2007], *lv denied* 9 NY3d 993 [2007]).

Supreme Court did not err in overruling defendant's hearsay objection to a police officer's testimony. Hearsay is defined as an out-of-court statement introduced to prove the truth of the mat-

ter asserted therein (*see Nucci v Proper*, 95 NY2d 597, 602 [2001]; *People v Brensic*, 70 NY2d 9, 14 [1987]). The officer testified that, during his interview of defendant at the police station, McCoy appeared in the doorway and told defendant to "[t]ell the truth." This sentence was a command, not a statement that can be proven true or false. Even so, it was offered here to show its effect on defendant, namely that he cried, changed his story and confessed to the crimes after McCoy spoke to him (*see People v Howard*, 299 AD2d 647, 648 [2002], *lv denied* 99 NY2d 629 [2003]). As the sentence uttered was not hearsay, the court properly overruled defendant's objection.

Spain, J.P., Kavanagh, Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.